IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Guerry E. Green, ) | |
| ) | C/A No. 3:02-3440-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Snavely Forest Products Co., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On October 16, 2002, Plaintiff Guerry E. Green filed a patent infringement action against Defendant Snavely Forest Products Co., alleging that Defendant directly infringed the '040 Patent "by making, using, selling, and or offering for sale the invention of the '040 Patent and or practicing the claimed invention of the '040 Patent in supplying articles to its customers . . . ." Complaint (Entry 1) ¶ 10.

The matter is before the court on Defendant's motion for summary judgment filed May 12, 2005. (Entry 60) Plaintiff filed a memorandum in opposition on June 17, 2005 (Entry 65), to which Defendant filed a response on June 27, 2005. The court held a hearing on September 8, 2005. The court has considered the motion, memoranda, exhibits offered by the respective parties, arguments of counsel, and the applicable law. The court concludes that Defendant's motion should be denied.

I. FACTS

Plaintiff is engaged in the business of manufacturing and selling solid core vinyl screen doors and products related to screen doors. Plaintiff applied for and received United States Patent No. 6,250,040 (the "040 patent"), which generally is directed to a screen door wherein the stiles and rails

are constructed of foamed, closed-cell, solid-core polyvinyl chloride (PVC). The '040 Patent claims:

1.      A screen door, comprising;
two spaced apart stiles;
two spaced apart rails, said two rails and two stiles being connected together to form a rectangle having an opening defined by the distances said rail and said stiles are spaced apart;
a screen dimensioned to cover said opening; and
means for fastening said screen to said two rails and said two stiles,
said two rails and two stiles being made of solid foamed plastic.
2.      The screen door as recited in claim 1, wherein said foamed plastic is closed cell foamed plastic.
3.      The screen door as recited in claim 1, wherein said foamed plastic is foamed vinyl.
4.      The screen door as recited in claim 1, wherein said foamed plastic is polyvinyl chloride.
5.      The screen door as recited in claim 1, wherein said two rails and two stiles have edges and said edges are adapted to be trimmed and cut by at least one-eighth of an inch so that said screen door fits a doorway.
6.      The screen door as recited in claim 1, wherein said two rails and two stiles have edges and said edges are adapted to be trimmed and cut by up to approximately one inch so that said screen door fits a doorway.
7.      The screen door as recited in claim 1, wherein two rails and said two stiles are connected together using only screws and mortise and tenon joints.
8.      The screen door as recited in claim 1, wherein said two rails and two stiles are connected together using only dowels and adhesives.
9.      The screen door as recited in claim 1, wherein said two rails and two stiles are connected together using screws countersunk into said stiles by at least one inch, forming holes.
10.     The screen door as recited in claim 9, further comprising foamed plastic plugs inserted in said holes.
11.     The screen door as recited in claim 1, wherein said rectangle has a groove formed therein, said groove running continuously from rail to stile around said opening.
12.     The screen door as recited in claim 1, wherein said fastening means is a spline, and said rectangle has a groove formed therein running around said opening and dimensioned [] to receive said spline.
13.     A screen door, comprising:
two rails and two stiles connected together to form a rectangular frame that defines an opening, said rectangular frame having an outer edge;
a screen dimensioned to cover said opening; and
means for fastening said screen to said rectangle,
said two rails and two splines made of foamed plastic and adapted to be trimmed and

2

      cut along said outer edge by up to approximately an inch.

      14.    The screen door as recited in claim 13, wherein said rectangular frame has a groove milled therein around said opening, and wherein said fastening means is a spline dimensioned to fit into said groove.

      15.    The screen door as recited in claim 13, wherein said rails and said stiles are connected together with dowels.

      16.    The screen door as recited in claim 15, wherein holes are formed in said stiles and said rails, and said dowels are inserted into said rails and said stiles along with an adhesive.

      17.    A screen door made by a process comprising the steps of:
- forming a rectangular frame of solid plastic rails and stiles, said rectangular frame having an opening;
- drilling holes into said stiles;
- connecting said rails and stiles by screws driven into said rails from said holes in said stiles;
- forming a groove in said rectangular frame around said opening;
- pressing a screen into said goove [*sic*] with a spline; and
- cutting said rectangular frame to fit a door frame.

      18.    The screen door as recited in claim 17, wherein said rails and stiles are made of polyvinyl chloride.

      19.    The screen door as recited in claim 17, wherein said rails and stiles are made of foamed, closed-cell plastic.

      20.    The screen door as recited in claim 19, wherein said plastic is polyvinyl chloride.

      21.    A screen door made by a process comprising the steps of:
- forming a rectangular frame of closed-cell, substantially solid plastic rails and stiles, said rectangular frame having an opening;
- drilling holes into said stiles and rails;
- connecting said rails and stiles by dowels driven into said rails and said stiles;
- fastening a screen to said rectangular frame; and
- cutting said rectangular frame to fit a door frame.

      22.    The screen door as recited in claim 21, wherein said plastic is polyvinyl chloride.

      23.    The screen door as recited in claim 21, further comprising the steps of: forming a groove in said rectangular frame around said opening; and pressing a screen into said groove with spline.

Thus, the '040 Patent contains twenty-three claims, four of which (Claims 1, 13, 17, and 21) are independent. The remaining nineteen claims are dependent claims.

The matter came before the court on Wednesday, November 10, 2004 on the parties' request

for construction of the following terms: "comprising," "solid," "substantially solid," and "made of." See Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995). On December 30, 2004, the court issued an order construing the terms as follows:

> "Comprising" - The term "comprising" is a term of art that permits the inclusion of other steps, elements or materials in addition to the elements or components specified in the claims.
>
> "Solid" - The term "solid" means "being of the same substance throughout."
>
> "Substantially Solid" - The term "substantially solid" means "generally being of the same substance throughout."
>
> "Made Of" - The term "made of" means "formed from."

## II. DISCUSSION

Defendant has moved for summary judgment pursuant to Fed R. Civ. P. 56. Summary judgment "shall be rendered forthwith when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). For the evidence to present a genuine issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The moving party has the burden of proving that there are no facts from which it would be open to a jury to make inferences favorable to the non-movant. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e). The opposing party may not rest on the mere assertions contained in the pleadings. Id. The court must view the record as a whole and in the light most favorable to the non-moving party. Terry's

Floor Fashions, Inc. v. Burlington Indus. Inc., 763 F.2d 604 (4th Cir. 1985).

### Law/Analysis

To support a finding of patent infringement, the accused device or method must embody each and every element of a claim, either literally or under the doctrine of equivalents. Mass. Inst. of Tech. v. Lockheed Martin Global Telecomms, Inc., 251 F. Supp. 2d 1006, 1010 (citing cases). Even if an element of the accused device does not literally infringe the patent claim, it may nevertheless infringe under the doctrine of equivalents if it performs the same function, in the same way, to produce the same result as the claimed element. Id. at 1010-11 (citing cases).

To determine whether an accused device literally infringes a patent claim, courts apply a two step analysis. Id. at 1011 (citing cases). First, the court construes the claims to determine their scope as a matter of law. Id. (citing Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996)). Once the claims have been construed to determine their scope, the claims must be compared to the accused device. Id. (citing cases). Each limitation of the claim must be present in the accused device. Any deviation from the claim precludes such a finding. Telemac Cellular Corp. v. Topp Telecom, Inc., 249 F.3d 1316, 1330 (Fed. Cir. 2001) (citing Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996)).

In this case, the court has determined that Plaintiff's patent describes two stiles and two rails of solid or substantially solid PVC that are connected to form the familiar rectangular frame of a screen door. Under this interpretation, Defendant's screen door also must be constructed of solid plastic or substantially solid plastic stiles and rails to infringe the patent. However, Defendant's screen door is constructed of at least one stile extruded with a continuous lengthwise void into which a hollow non-plastic reinforcing member is inserted. Defendant's screen door does not describe a

rectangular shape constructed from two stiles and two rails that are formed from the same substance, or generally the same substance, throughout each stile and rail. Defendant's screen door deviates from the screen door described by Plaintiff.

Plaintiff contends that the use of the open-ended term "comprising" in his patent enables the claim to read on devices and methods that include additional elements. The court agrees with Plaintiff's general proposition of law that "the term 'comprises' permits the inclusion of other steps, elements, or materials." In re Baxter, Marckeling, Robinson & Stamatoff, 656 F.2d 679, 686 (1981). The court disagrees, however, that Defendant has merely included another step, element, or material by designing a stile that is hollow and fitted with a metal stiffening rod. The limitation of Plaintiff's claim–that each stile and rail of the screen door is through-and-through composed of the same substance–is not present in Defendant's screen door. The court concludes that no reasonable jury could find that Defendant's product door literally infringes Plaintiff's screen door. The court turns to the question of infringement by equivalency.

Infringement by equivalency is grounded on the substantial sameness of the patented invention and the accused composition. Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1191 (Fed. Cir. 1996). Plaintiff has not specifically asserted the doctrine of equivalents in the complaint or response to Defendant's motion for summary judgment. However,

> [a] claim under the doctrine of equivalents is not waived . . . when a party merely abstains from arguing equivalent infringement. The Federal Circuit has stated that if a party offers "evidence and argument relevant to the doctrine of equivalents"–even if the party does not "particularize" the evidence as such–"the district court must give [the patentee] an opportunity to prove whether [the other party] infringed under the doctrine of equivalents."

Mass. Inst. of Tech., 251 F. Supp. 2d at 1011 (quoting Wright Med. Tech., Inc. v. Osteonics Corp.,

122 f.3d 1440, 1445 (Fed. Cir. 1997)). To prevail under the doctrine of equivalents, the patent-holder must show that the accused device lacks an element contained in the invention, but substitutes some other element that performs substantially the same function in substantially the same way to achieve substantially the same result. Id. at 1012 (citing Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950)). The purpose of the equivalents doctrine is to prevent copyists from making "'unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of the law.'" Id. at 1014 (quoting Graver Tank, 339 U.S. at 607). If the differences between a claim and an accused device are "insubstantial" to one with ordinary skill in the art, the product may infringe under the doctrine of equivalents. Business Objects, S.A. v. Microstrategy, Inc., 381 F. Supp. 2d 1107, 1110 (2005) (citing cases).

  Plaintiff asserts that Defendant has not changed the fundamental character of the door stiles at issue. Plaintiff contends that "[it] matters not how [Defendant] manufactures its door, but rather the resulting product is what must be compared to [Plaintiff's] patent claims." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 5. According to Plaintiff, the hollow core and reinforcing piece fitted into Defendant's stile does not change the fundamental nature of the solid plastic stiles. Perhaps because Plaintiff does not specifically invoke the doctrine of equivalents, Defendant does not address this argument. Nevertheless, the court concludes that a genuine issue of material fact exists as to whether the reinforcing member incorporated into Defendant's product is an insubstantial change that results in an infringement of Plaintiff's patent under the doctrine of equivalents. See id. (noting that equivalence is a factual matter normally reserved for a fact finder). Defendant's motion for summary judgment is denied.

III.  CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is denied.

**IT IS SO ORDERED.**

                                            /s/  Margaret B. Seymour
                                            United States District Judge

Columbia, South Carolina

March 30, 2006.